UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES STEVENS,

          Petitioner,          Case No. 14-13513

v.          HON. AVERN COHN

PAUL KLEE,

          Respondent.
_____/

**MEMORANDUM AND ORDER**
**DENYING PETITION FOR WRIT OF HABEAS CORPUS**
**AND**
**DENYING A CERTIFICATE OF APPEALABILITY**

I.  Introduction

This is a habeas case under 28 U.S.C. § 2254.  James Stevens, ("Petitioner"), was convicted after he pled no contest in state court to one count of assault with intent to commit murder, M.C.L. § 750.83, and one count of first-degree home invasion, M.C.L. § 750.110a(2).  Petitioner was sentenced to 17-to-30 years for the assault conviction and 13-to-20 years for the home invasion conviction.  Petitioner presents two claims: (1) his plea was taken in violation of Henderson v. Morgan, 426 U.S. 637 (1976) because he was not made aware of the elements of the crime of assault with intent to murder, and (2) he was denied the effective assistance of counsel.  The petition will be denied for lack of merit.  The reasons follow.

II.  Background

A.  Factual

The evidence presented at Petitioner's preliminary examination described a harrowing incident on January 22, 2010 in which Petitioner attacked his wife, Debra Stevens (Debra), her friend, Tracy Wilson (Wilson), and one of his children at his mother-in-law's home. Apparently, Debra had left the home she shared with Petitioner and their children the week before and was staying with her mother. What follows is a brief summary of the testimony from the preliminary examination.

Wilson testified that she was at Debra's mother's house and that she (Wilson) and Debra were standing in front of the house when Petitioner pulled up in his vehicle. Petitioner demanded to see his children. Debra refused his request and went inside the house.

Wilson stayed outside and attempted to convince Petitioner to leave. Petitioner then returned to his vehicle and came back with his hands in his pockets. After Wilson demanded to see what Petitioner had in his hands, Petitioner produced a handgun and walked towards her. Wilson called 9-1-1, but before she could finish dialing, Petitioner said, "you go ahead and call 911, and I got five minutes to do what I'm going to do and I'm going to start with you." Tr. 3/4/10, p. 23. Wilson pleaded for Petitioner to stop; he demanded that she line up his children in the garage. Petitioner then grabbed Wilson, and she thought he was going to kill her. Wilson managed to break free. As she ran from Petitioner, she heard a gun shot. She looked back and saw Petitioner kicking the garage door into the house as Debra was trying to keep it shut.

Debra testified that while Wilson was speaking with Petitioner outside, she went inside the house and called 9-1-1. She stayed on the phone until she heard a loud bang. She ran to the garage door and saw Petitioner heading towards her with a gun.

She tried to keep the door closed but Petitioner put his arm through the opening and fired the gun. Debra thought she was going to be shot and moved away from the door. Petitioner then forced his way into the house.

Once inside, Petitioner jumped on their seventeen-year-old son, Alex, who had armed himself with a baseball bat. Petitioner struck Alex on the head with the butt of the gun. Debra tried to wrestle the gun away from Petitioner. Petitioner hit her in the head with the gun. Debra then saw the gun go flying past her. Petitioner then continued to attack Alex. While Petitioner was punching Alex on the floor, Debra found Petitioner's gun and shot him, stopping the assault.

Detective Sergeant Michael Spring of the Michigan State Police investigated the shooting. Petitioner made a statement to Detective Spring that he discharged a round from his gun when he was in close proximity with Wilson.

B.  Procedural History

1.  Trial Court

Following the preliminary examination, trial counsel argued that the prosecution had not presented sufficient evidence that Petitioner intended to kill anyone. The trial court rejected the argument and bound Petitioner over for trial on all charges.

Prior to trial, Petitioner accepted a plea bargain. Petitioner agreed to plead no contest to one count of assault with intent to commit murder and one count of first-degree home invasion. The prosecutor agreed to dismiss two assault charges, two firearm charges, and an habitual offender charge. The prosecutor also agreed to recommend concurrent sentences. Finally, the parties agreed for a minimum sentence of seventeen years for the assault conviction. All these terms were placed on the

record during the plea hearing.

At the plea hearing, the trial court informed Petitioner of all the trial rights he would be waiving by entering his no contest plea. The trial court asked Petitioner if he understood the charge of assault with intent to murder. Petitioner indicated that he did. Petitioner confirmed that he understood all the rights he would be giving up if he pleaded no contest. Petitioner denied that any promises or threats, other than what was place on the record, were made to obtain his plea. The trial court asked Petitioner if he had satisfactorily discussed the agreement at length with his attorney, and Petitioner indicated that he had. By stipulation, considered a police report to establish the factual basis for the plea. After reviewing the police report, the trial court found there was sufficient evidence to demonstrate that Petitioner entered the home with the intent of ending the lives of one of the occupants. The trial court then accepted Petitioner's plea.

At sentencing, Petitioner denied that he intended to kill anyone and said that he only accepted the plea bargain because he was threatened with a sentence of thirty-five years to life if he stood trial. The trial court sentenced Petitioner in accordance with the plea agreement, as described above.

2. Appellate and Collateral Review

Following his sentence, Petitioner sought and was appointed appellate counsel who filed a motion to withdraw the plea. Petitioner argued that his plea was involuntary and that trial counsel failed to pursue possible defenses. The trial court denied the motion, finding that Petitioner's plea was voluntary, knowing, and intelligent, and that trial counsel was not ineffective.

Petitioner then filed a delayed application for leave to appeal in the Michigan

Court of Appeals, raising the following claim:

> The Defendant's plea of no contest was not entered voluntarily, knowingly, and intelligently, as required under the State and Federal constitutions, this Court should grant leave to appeal, vacate the trial court's opinion/order and remand for an evidentiary hearing.

The Michigan Court of Appeals denied the application "for lack of merit in the grounds presented." People v. Stevens, No. 305886 (Mich. Ct. App. Oct. 3, 2011). The Michigan Supreme Court denied the application by form order. People v. Stevens, 491 Mich. (2012).

Petitioner then returned to the trial court and filed a motion for relief from judgment, raising the following claims:

> I. Did appellate counsel provide ineffective assistance of counsel by neglecting to raise these issues on direct appeal satisfying the "good cause" requirement.
>
> II. The Michigan Supreme Court has held that a defendant, after pleading guilty may raise on appeal only those defenses and rights which would preclude the state from obtaining a valid conviction against the defendant [for] charges brought under an inapplicable statute qualify.
>
> III. Did the defendant receive improper offense variables based upon in applicable statute.

The trial court denied the motion for relief from judgment because review was barred by Michigan Court Rule 6.508(D)(2) and (3) and because Petitioner's claims lacked merit.

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals. It was denied for "failure to establish entitlement to relief under Michigan Court Rule 6.508(D)." People v. Stevens, No. 313654 (Mich. Ct. App. Sept. 6, 2013). The Michigan Supreme Court also denied leave to appeal in a standard order. People

v. Stevens, 495 Mich. 992 (2014).

### III.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam), quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) quoting Williams, 529 U.S. at 413. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S.86, 101 (2011),

6

quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87 (internal quotation omitted).

IV. Analysis

A. Voluntariness of Plea

Petitioner claims that his plea was involuntary because he did not understand that the charge of assault with intent to commit murder requires that the defendant intend to kill the victim. Petitioner asserts that because the elements of the offense were not explained to him, his plea was taken in violation of Henderson.

The only question on collateral review of a guilty plea is whether the plea was counseled and voluntary. United States v. Broce, 488 U.S. 563, 569 (1989); Bousley v. United States, 523 U.S. 614, 618 (1998). A guilty plea is voluntary if the accused understands the nature of the charges against him and the constitutional protections that he is waiving. Henderson, 426 U.S. at 645 n.13. A plea is knowing and intelligent if it is done "with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748 (1970). The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he or she is pleading guilty. King v. Dutton, 17 F.3d 151, 154 (6th Cir. 1994).

When a petitioner brings a federal habeas petition challenging his plea of guilty, the state generally satisfies its burden by producing a transcript of the state-court proceedings showing that the plea was made voluntarily. Garcia v. Johnson, 991 F.2d 324, 326 (6th Cir. 1993). The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness. Id. The petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. Id. at 328.

Here, the record establishes that Petitioner knowingly and voluntarily pleaded no contest. Petitioner was advised of the maximum penalties of the crimes that he was pleading to, as well as the rights that he would be giving up by pleading guilty. He also acknowledged during the plea hearing that he understood the charge of assault with intent to commit murder. A defendant's "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Furthermore, as noted above, the terms of the plea agreement were placed on the record, and Petitioner acknowledged that he was pleading voluntarily and that no threats had been made to get him to plead guilty.

Petitioner's contention about misunderstanding of the elements of assault with intent to commit murder is belied by the record. While Petitioner notes that for a time state courts debated whether lesser forms of the mens rea for murder could satisfy the "intent to murder" element, Petitioner does not contend that he was aware of the intricacies of the mens rea requirement for murder and at the same time ignorant as to the straight-forward mens rea requirement for assault with intent to commit murder.

Moreover, during the plea colloquy, Petitioner confirmed that he understood the

8

charges. The parties stipulated to a police report narrative for a factual basis. The report indicated that Petitioner approached the house with a gun and two speed loaders, which indicated that he most likely intended to fire multiple shots and harm the occupants in the home. Tr. 7/6/10, pp. 7-9. After reviewing the police report, the trial court stated it was "satisfied that when he entered the dwelling with the weapon because of the background with the domestic relations in this case, I am satisfied that when he entered with the weapon, he did so to take the life of the – one of the occupants." Id. at 6–7. Accordingly, the plea colloquy shows that Petitioner knew he was pleading non contest to an offense involving an intent to kill.

As noted above, Petitioner relies on the Supreme Court's decision in Henderson v. Morgan, 426 U.S. 637 (1976). This case is distinguishable. In Henderson, the defendant pled guilty to the lesser offense of second-degree murder, an offense he had never been charged with. The Supreme Court determined that because the defendant had never been charged with that offense prior to the plea, and there was no other indication in the record that he had been informed that the offense required a showing of an intent to kill, his plea was not knowingly entered. Here, in contrast, Petitioner pled no contest to the very offense he was charged with. At the end of the preliminary examination, trial counsel argued the evidence did not show that Petitioner shot at Wilson with the intent to kill her. Tr. 3/4/10, p. 111. The trial court rejected this argument and bound Petitioner over on that charge. In so doing, the trial court found that the factual basis offered for the plea indicated that Petitioner entered the home "with the intent to take the life of one of the occupants." Accordingly, unlike Henderson there is ample record support for the trial court's conclusion that Petitioner was aware

that the charge of assault with intent to commit murder required a showing of an intent to kill. It also follows that the state court's rejection of this claim was not an unreasonable application of clearly established Supreme Court law. Petitioner is therefore not entitled to habeas relief on this ground.

### B. Ineffective Assistance of Counsel

In his second claim, Petitioner says that trial counsel was ineffective because he did not adequately explain to him the requisite mental state to support a charge of assault with intent to commit murder. He says that the prosecution would have been unable to prove that Petitioner intended to kill the victims, and had he been properly advised, he would never have accepted the plea bargain.

A violation of the Sixth Amendment right to effective assistance of counsel is established where an attorney's performance was deficient and the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). In guilty-plea cases, the "performance" prong requires showing that defense counsel's representation fell below an objective standard of reasonableness or was outside the range of competence demanded of attorneys in criminal cases. Hill v. Lockhart, 474 U.S. 52, 56-59 (1985). The "prejudice" prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Id. at 59. The petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id.; see also Smith v. United States, 348 F.3d 545, 551-552 (6th Cir. 2003).

Petitioner's claim lacks merit. As explained above, Petitioner was aware of the intent requirement. He testified at the plea hearing that he had satisfactorily discussed

the plea agreement with trial counsel and confirmed that he understood the charge of assault with intent to commit murder. The arguments made at the preliminary examination by trial counsel and the factual basis relied on by the trial court also confirm that Petitioner was aware of the intent to kill requirement. Accordingly, Petitioner has not shown that trial counsel was ineffective for failing to ensure that he knew the nature of the charges against him.

Finally, Petitioner argues that the prosecution could not prove at trial that Petitioner intended to kill the victims because the victims did not see him directly point the gun and try to shoot them. Petitioner does not explain how this affected his plea or how trial counsel was ineffective. To the extent he is claiming there was insufficient evidence of his intent, the record shows that Petitioner attacked the victims with a gun and had extra ammunition on his person. He told Wilson that he was not concerned about her calling 9-1-1 because he only needed five minutes. Thereafter, he fired his weapon twice when he attacked the house. Petitioner wielded the gun during the attack, and it was only after his son apparently disarmed him and his wife shot him that the attack ceased. This evidence would have been sufficient for a jury to conclude beyond a reasonable doubt that Petitioner intended to kill one or more of the victims. Accordingly, Petitioner is not entitled to habeas relief on sufficiency of the evidence grounds.

## IV. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is

required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002).

Here, jurists of reason would not debate the Court's conclusion that Petitioner is not entitled to habeas relief on any of his claims.

## V. Conclusion

Accordingly, the petition is DENIED. A certificate of appealability is also DENIED.

SO ORDERED.

S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: November 6, 2015
       Detroit, Michigan